Opinion adopted by the Supreme Court.

### GRIGSBY et al. v. FIRST NAT. BANK IN QUANAH et al.
#### No. 1842—7558.

Commission of Appeals of Texas, Section B. Jan. 8, 1941.

For former opinion, see 144 S.W.2d 244.

Charles Nordyke, of Stephenville, and McWhorter, Howard & Cobb and Charles L. Cobb, all of Lubbock, for Grigsby.

E. L. Klett, of Lubbock, for the Bank.

TAYLOR, Commissioner.

It is correctly stated in the opinion in this case at the beginning of the eighth paragraph 144 S.W.2d page 245, that Mrs. Borders was guardian of the minors from "November 18, 1929, until some time in 1936." Complaint is made in the motion for rehearing that it is later incorrectly stated that November 15th "the date the money was put up," was "three days before application for guardianship was filed"; also that "November 19th" is later stated to be "the day after the application for appointment as guardian was filed." Both statements are erroneous. The word "granted" should have been used in each instead of the word "filed." The application was filed on November 6th, and was granted on November 18th. The opinion is hereby corrected so as to substitute the word "granted" for "filed" in the statements referred to. The further statement that the $11,000 draft was drawn by Mrs. Borders "ten" days before her appointment as guardian is also corrected so as to make it read "three" days before her appointment.

The errors pointed out and corrected have no bearing on either the conclusion reached, or the reasoning by which it was reached.

The bank sets up in its motion for rehearing the sole ground that the court erred in finding there is no evidence that the guardian received the cash payment made for the minor's property.

The Court's conclusion that the bank is liable is predicated upon no such finding. The entire motion for rehearing is taken up with pointing out and discussing testimony to the effect that the terms of the sale of the minor's property to Harper were complied with and that Mrs. Borders received payment therefor. These facts are not questioned here and were not questioned upon original hearing.

The bank is liable, not upon the ground that Mrs. Borders did not receive payment for the minor's property sold by her, but

upon facts pointed out by the bank's witnesses in connection with the prearranged method between Mrs. Borders and the bank and its officials whereby the payment was consummated with the result that the cash paid for the minor's property was made available to Mrs. Borders for her individual use to enable her to purchase the Lubbock bakery.

The effect of the bank's contention is, and was upon original hearing, that the making of the payment to Mrs. Borders for the minor's property to Harper in the manner and with the result stated, when explained by the bank's witnesses, relieves it of liability. The interpretation of the explanation by counsel for the bank in his supplemental argument is in effect that the cash was received by Mrs. Borders through the prearranged bank transaction, not as an individual loan to her, but as payment for the purchase price for the minor's interest in the property.

That contention was overruled upon original hearing and is here overruled. The conclusion is predicated not upon a disbelief of the bank's testimony, as counsel for the bank seems to infer, but upon the legal effect and consequences of that testimony. The mere fact that Mrs. Borders received payment does not relieve the bank of liability in the face of the bank's own testimony showing that the bank and its officers in the process by which payment was made, participated in making the minor's funds available to Mrs. Borders individually in the manner pointed out in the original opinion. There is no distinction from the standpoint of legal consequences between making the cash proceeds of the sale of the minor's property available upon the personal check of Mrs. Borders by means of a loan to her, and making it available for her personal use in the form and manner pointed out under the bank's explanation of the details as to how the transaction was handled. Counsel in his supplemental argument for the bank upon original hearing interprets the bank's explanation as follows (the language quoted being counsel's save that of the last two parentheses, which is inserted in keeping with the bank's testimony): "Under a three-way or four-way deal, Messrs. Caskey and Hughes (or the bank for Messrs. Caskey and Hughes or at their instance) on November 15 (three days before she became guardian) deposited the required cash payment in the

bank and the bank carried said money to the credit of the guardian, (in her individual account) with the understanding it was not a loan to her, *and not subject to her check until the guardianship sale was completed.* * * *." (Italics ours). Counsel further states in connection with the interpretation that "It may be, of course, that the transaction was awkwardly handled, and that some of the explanations may not appear reasonable or consistent, but nevertheless, under the opinion of Judge Williams in the Anderson case, supra [93 Tex. 119, 53 S.W. 821], the transaction was subject to explanation, in which the trial court, as well as the Court of Civil Appeals, had the right, as they found, to believe that Judge Welch and Mr. Hughes told the truth."

As pointed out above, the disagreement of this Court with the courts below is not predicated upon a failure to give credence to the testimony of the bank's witnesses, but upon the legal effect of that testimony, which alone is made the basis of the original opinion. Furthermore there is no parallel from the standpoint of the legal consequences flowing from the explanation of the purpose of the execution and handling of the note in the Anderson case and those flowing from the execution and handling of the note by Mrs. Borders in the present case. In the Anderson case the explanation was to the effect that the note made to the bank by Jernigan was made after he had already converted the county's funds and constituted no part of the process whereby the conversion was consummated by him.

As stated in effect in the opinion upon original hearing, "looking through form to substance" the true source of the $7,500 was the minor's property, and such use was made of it by Mrs. Borders, the bank and its officials, jointly, in the process of making it available to her individually, as to invoke the principles applied in the Adoue & Lobit and Wichita Royalty Company cases [104 Tex. 379, 137 S.W. 648, 37 L.R.A.,N.S., 409, Ann.Cas.1914B, 667 and 127 Tex. 158, 89 S.W.2d 394, 93 S.W. 2d 143] cited in the opinion; and, as further pointed out in the opinion, whether the $7,500 furnished by Hughes and Caskey and credited by them to Mrs. Borders' individual account in the bank was Harper's money originally, or Mrs. Borders', is immaterial so far as her liability, or that of the bank, is concerned.

After full consideration of the motion for rehearing we adhere to our opinion upon original hearing. The motion is overruled.

Opinion adopted by the Supreme Court.